IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BRETT LIEBERMAN, individually and
on behalf of all others similarly situated,

               Plaintiff,

     v.

PORTAGE COUNTY, MIKE LUKAS, CORY
NELSON, DALE BOETTCHER,
JOHN DOE PORTAGE COUNTY SHERIFF'S OFFICE
PERSONNEL, and JOHN DOE PORTAGE COUNTY
DISTRICT ATTORNEY'S OFFICE PERSONNEL,

               Defendants,

     and

WISCONSIN COUNTY MUTUAL INSURANCE
CORPORATION,

               Intervenor-Defendant.

OPINION and ORDER

18-cv-450-jdp

---

Plaintiff Brett Lieberman was detained at the Portage County jail from August 2014 to January 2016. He is proceeding on claims that defendants violated his rights under the Fourth Amendment, the Sixth Amendment, the Fourteenth Amendment as well as the Wisconsin Constitution and the Wisconsin Electronic Surveillance Act by recording privileged communication he had with his lawyer and then sharing those recordings with prosecutors, who used the recordings in court proceedings against him. Two motions are now before the court: (1) defendants' motion for summary judgment on the ground that Lieberman failed to exhaust his administrative remedies, Dkt. 54, and (2) Lieberman's motion for class certification under Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3), Dkt. 59.

The court will grant defendants' summary judgment motion in part and deny it in part. The court concludes that the jail's own rules did not require Lieberman to grieve his claim that defendants recorded his privileged calls. But defendants have shown that Lieberman did not exhaust his administrative remedies as to his claim that defendants shared the recordings for use in court proceedings.

The court will deny Lieberman's motion to certify a class under Rule 23(b)(2) because Lieberman isn't an adequate representative for such a class. As for the Rule 23(b)(3) class, Lieberman has satisfied most of the relevant requirements. But the court will stay a decision on whether to certify the class to allow Lieberman to submit supplemental materials showing that his counsel meet the requirements under Rule 23(g)(1).

## MOTION FOR SUMMARY JUDGMENT

Defendants' summary judgment motion is directed at Lieberman rather than the class generally and neither side asks the court to decide the motion for class certification first, so the court will begin with the motion for summary judgment. *See Costello v. BeavEx, Inc.,* 810 F.3d 1045, 1058 n.7 (7th Cir. 2016) (Rule 23 doesn't require court to consider certification before the merits). Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Generally, to comply with § 1997e(a), a prisoner must "properly take each step within the administrative process," *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002), which includes following instructions for filing the initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005), as well as filing all necessary appeals, *Burrell v. Powers*, 431 F.3d

282, 284-85 (7th Cir. 2005), "in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. The purpose of these requirements is to give the prison administrators a fair opportunity to resolve the grievance without litigation. *Woodford v. Ngo*, 548 U.S. 81, 88–89 (2006). A failure to exhaust administrative remedies under § 1997e(a) is an affirmative defense that must be proven by the defendants. *Davis v. Mason*, 881 F.3d 982, 985 (7th Cir. 2018).

In this case, the parties discuss the following issues in their briefs:

(1) whether Lieberman's claims fall outside the jail's grievance procedure because they are challenges to rules or policies;

(2) whether Lieberman was excused from filing a grievance because jail officials stopped recording his attorney phone calls in November 2015;

(3) whether communications between Lieberman's counsel and jail staff satisfied the jail's rule that "Inmates must first attempt to solve all grievances on an informal basis with the Staff or Corporal," Dkt. 58-2 and 58-3;

(4) whether Lieberman complied with the jail's rule to submit a written grievance;

(5) if Lieberman did submit a written grievance, whether that grievance encompasses all of his claims in this case.

For the reasons discussed below, the court concludes that Lieberman wasn't required under § 1997e(a) to file a grievance on his claim that defendants were recording his attorney phone calls, but that defendants have met their burden to show that Lieberman failed to exhaust his administrative remedies as to his claim that defendants turned the recordings over to the district attorney's office for use against Lieberman in court proceedings.

## A. Recording

As for Lieberman's claim that defendants monitored and recorded his attorney calls, it is undisputed that the jail's custody manual in effect at the relevant time states the following: "Grievances will not be accepted if they are challenging the rules and policies themselves, state

or local laws, court decisions and probation/parole actions." Dkt. 60-7. Lieberman says that this provision applies in this case because the jail had a policy of recording attorney phone calls with inmates. Defendants do not deny that they had such a policy. In fact, in their opening summary judgment brief, they emphasize that the inmate handbook stated in bold language that "**All telephone calls are recorded and monitored.**" Dkt. 56, at 1 (citing Dkt. 58-2). An inmate is not required to grieve an issue that the facility's own rules say is outside the scope of the grievance procedure. *Thomas v. Reese*, 787 F.3d 845, 848 (7th Cir. 2015). *See also Jones v. Bock*, 549 U.S. 199, 218 (2007) ("[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." (internal citations and quotation marks omitted)).

Defendants didn't address the statement from the custody manual in their opening brief. But in their reply brief they contend that the statement should not apply for four reasons: (1) the grievance Lieberman says he filed didn't invoke a particular rule or policy; (2) Lieberman never saw the custody manual, so he couldn't have relied on it; (3) the inmate handbook expressly allowed inmates to file grievances about jail policies; and (4) defendants would have accepted a grievance challenging the recording policy.

Defendants' first argument is puzzling because it relates to a disputed grievance that defendants deny Lieberman ever filed.[1] But even if the court assumes that Lieberman did file

---

[1] Lieberman testified that he filed a grievance in which he wrote, "Do not record my attorney phone calls." Dkt. 65 (Lieberman Dep. 79:1–3). There are no records that defendants received such a grievance and defendants deny that they did. Because the court is resolving the motion for summary judgment on other grounds, the court need not hold a hearing to determine whether Lieberman actually filed that grievance. *See Pavey v. Conley,* 544 F.3d 739, 741–42 (7th Cir. 2008).

the grievance, it wouldn't be relevant to this argument. The question is whether Lieberman's *claim* falls within the scope of the jail's grievance system. It simply doesn't matter what words Lieberman may have used in a grievance. Because Lieberman's claim is a challenge to the jail's policy, it could not be grieved under the plain language of the custody manual.

As for the second argument, defendants cite no authority for the view that defendants are not required to follow their own rules on what qualifies as a grievable issue unless an inmate relies on that rule in deciding not to file a grievance. Although the court of appeals has held that officials cannot require an inmate to follow grievance procedures that aren't published, *e.g.*, *King v. McCarty*, 781 F.3d 889, 896 (7th Cir. 2015), the court has not held that jail officials can use § 1997e(a) to require prisoners to grieve claims that the jail's own policies say should not be grieved. In the absence of such authority, this court declines to adopt defendants' proposed rule.

Defendants' last two arguments are related to the same question, which is whether the policy shouldn't apply because jail officials would have accepted a grievance that Lieberman filed about the recording policy, if he had filed such a grievance. They contend that Lieberman's grievance would have been allowed under the inmate handbook, which says that a "grievance must involve a rule, procedure, or complaint of oppression or misconduct by an employee in the administration of such rules." Dkt. 58-2. They also cite testimony of defendant Dale Boettcher (the jail sergeant) that Boettcher "would have had a conversation" with Lieberman if Lieberman had filed a grievance about the recording policy. Dkt. 62 (Boettcher Dep. 162:19–163:3).

Neither of these arguments show that the jail would have accepted a grievance challenging the recording policy. The court need not decide whether the inmate handbook

could override the jail's custody manual because there is no conflict between the two documents. Lieberman's claim in this case doesn't simply "involve" a rule, which would be permitted by the handbook; the claim is a challenge to the policy itself, which is prohibited by the manual.

Boettcher's testimony is not sufficient to support a contrary conclusion. Boettcher was equivocal, initially stating that he would have rejected the grievance, and then stating that he would have spoken to Lieberman about the grievance. Dkt. 62 (Boettcher Dep. 161:1–164:2). He never testified that a grievance challenging the recording policy was permitted under the jail's rule. More important, after-the-fact testimony about whether a facility would have accepted a grievance can't trump the plain language of the policy itself. *See King*, 781 F.3d at 896 (rejecting testimony that officials would have accepted a grievance despite a contrary policy because "the defendants cannot defeat the suit by retroactively amending the policy with a new rule or policy").

Defendants do not cite any evidence that they have ever accepted grievances about policies in the past, either the recording policy or any other. In the absence of such evidence, the language of the custody manual is controlling. *Id.* ("[N]othing in the jail's stated policy shows beyond reasonable dispute, that the jail would have or could have . . . otherwise relaxed its stated rules."). So the court will deny defendants' motion for summary judgment on Lieberman's claim that defendants violated his state and federal rights by recording his attorney phone calls.

## B. Transmitting and using the recording

Lieberman alleges that defendants not only monitored and recorded his attorney phone calls but also shared the recordings with the district attorney's office, which then used the

information to increase the amount of his bail. Although Lieberman alleges that defendants were disclosing information to non-jail staff for use outside the jail, Lieberman doesn't deny that this claim relates to "prison conditions" and falls within the scope of § 1997e(a), so the court doesn't consider that issue. *See Morgan v. Messenger,* No. CIV. 02-319-M, 2003 WL 22023108, at *2 (D.N.H. Aug. 27, 2003) (claim that prison officials shared prisoner's private information with parole board and county attorney was about "prison conditions" within meaning of § 1997e(a)). Lieberman also doesn't contend in his brief that defendants had a policy of sharing recording of attorney phone calls, so his argument under the custody manual doesn't apply.[2] By failing to make an argument, Lieberman has forfeited the point.

Lieberman's other arguments fail as well. First, Lieberman says that he was excused from filing a grievance because jail officials stopped recording his attorney phone calls in November 2015, which would have mooted any grievance that he filed. He relies on *Thornton v. Snyder,* 428 F.3d 690, 697 (7th Cir. 2005), in which the court held that § 1997e(a) didn't require a prisoner to file an administrative appeal "after receiving the relief he requested in his grievances." But *Thorton* doesn't apply here because this claim isn't about recording Lieberman's calls.

Under *Thorton*, an inmate must still exhaust if "*some* remedy is available to the inmate through the administrative process, even if not necessarily the relief desired." *Id.* at 695

---

[2] In his proposed findings of fact, Lieberman says that jail officials did have a policy of sharing recordings of attorney phone calls, Dkt. 75, ¶ 12, but that allegation is not supported by the cited evidence, which is an email that says nothing about such a policy. Rather, the email states that in one instance jail staff sent the district attorney recordings of an inmate's phone calls. Dkt. 60-6, at 9. The email also states that jail staff didn't know that attorney phone calls had been included in the recording and that the district attorney's office did not want such recordings. *Id.*

(emphasis added). In this case, the alleged change in policy would have granted Lieberman some relief because defendants couldn't transmit or use what they didn't record. But a decision to stop recording phone calls going forward wouldn't stop officials from transmitting or using calls that had already been recorded. Lieberman doesn't allege that jail officials ever promised not to transmit or use existing recordings. Because part of Lieberman's claim is that defendants stored the recordings, *see* Dkt. 14, at 4, there was "still the possibility of some relief that [jail] officials could have offered" Lieberman on this claim, *Thornton*, 428 F.3d at 696, and he was not excused from exhausting.

Second, Lieberman says that he exhausted this claim by filing a grievance in which he wrote, "Do not record my attorney phone calls." Dkt. 65 (Lieberman Dep. 79:1–3). Defendants deny that they ever received that grievance, but the court will assume for the purpose of this motion that Lieberman filed it. This assumption does not help Lieberman because the grievance said nothing about sharing or using a recording.[3] "[A] grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Strong v. David*, 297 F.3d 646 (7th Cir. 2002). Recording a telephone call within the jail is a different "wrong" than sharing a recording with a third party outside the jail and then using the recording in a court proceeding. Jail officials reviewing the grievance that Lieberman says he filed would not have had notice that he was complaining about disclosure of confidential information to the district attorney's office.

The court concludes that Lieberman failed to exhaust his administrative remedies as to his claims that defendants transmitted and used recordings of his attorney phone calls.

---

[3] Lieberman doesn't contend that he couldn't file a grievance because he was unaware that defendants were transmitting or using the recordings, so the court doesn't consider that issue.

Defendants are entitled to summary judgment on that claim and the court will dismiss the claim without prejudice. *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) ("[A]ll dismissals under § 1997e(a) should be without prejudice.").

## MOTION FOR CLASS CERTIFICATION

The requirements for class certification under Rule 23 are well established: (1) the scope of the class as to both its members and the asserted claims must be "defined clearly" using "objective criteria," *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015); (2) the class must be sufficiently numerous, include common questions of law or fact, and be adequately represented by plaintiffs (and counsel) who have claims typical of the class, Fed. R. Civ. P. 23(a); and (3) the class must meet the requirements of at least one of the types of class actions listed in Rule 23(b).

In this case, Lieberman asks for certification under both Rule 23(b)(2) and (b)(3). Rule 23(b)(2) applies when the plaintiffs are seeking injunctive or declaratory relief and "the party opposing the class has acted or refused to act on grounds that apply generally to the class"; Rule 23(b)(3) applies when "the questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

The court will consider below whether Lieberman has satisfied each of these requirements.

## A. Class definition

Lieberman seeks to represent the following two classes:

(1) All Jail detainees whose phone calls to attorneys were recorded, transmitted, or used from June 12, 2012 until the Jail's distribution of the Inmate Orientation Booklet dated November 24, 2015.

(2) All Jail detainees whose phone calls to attorneys were recorded, transmitted, or used after the Jail's distribution of the Inmate Orientation Booklet dated November 24, 2015.[4]

The proposed classes must be narrowed in two respects. First, the court cannot allow Lieberman to proceed on claims that defendants "transmitted" and "used" recordings of attorney phone calls. The court has concluded that Lieberman did not exhaust his administrative remedies for those claims, and Lieberman cannot serve as class representative on a claim that he doesn't have the right to bring himself. *See Arreola v. Godinez*, 546 F.3d 788, 799 (7th Cir. 2008). Because Lieberman didn't ask the court to add another class representative in the event the court found that Lieberman couldn't serve, the court doesn't consider that issue. This makes it unnecessary to consider defendants' objections about the transmission and use claims.[5]

Second, Lieberman doesn't allege in his complaint or his motion for class certification that defendants continued recording him after November 2015. In fact, he alleges just the opposite in his summary judgment materials. Dkt. 67, at 14 ("Defendants did—at long last—designate Plaintiff's attorney phone numbers as private in November 2015 and stopped recording his attorney calls."). So he can't serve as a representative for that subclass.

---

[4] Lieberman doesn't expressly say why the distribution of the November 2015 booklet requires a separate subclass, but presumably it is because the booklet gave detainees the option to designate attorney phone calls as "private" so that they would not be recorded.

[5] Even if Lieberman had exhausted his administrative remedies for his "transmission" and "use" claims, the court would not certify a class for those claims because Lieberman hasn't identified any other inmates who would fall into that class. And even if there were other inmates, Lieberman hasn't shown that the claims could be resolved on a class-wide basis.

This leaves the following proposed class: "All Jail detainees whose phone calls to attorneys were recorded from June 12, 2012 until the Jail's distribution of the Inmate Orientation Booklet dated November 24, 2015." That definition uses objective criteria that clearly separate class members from non-class members, as required by *Mullins*, 795 F.3d at 657.

Defendants object to the definition on the ground that it will be difficult for Lieberman to determine which inmates' calls were recorded. But the court made it clear in *Mullins* that concerns about "the potential difficulty of identifying particular members of the class . . . are better addressed by applying carefully the explicit requirements of Rule 23(a) and especially (b)(3)." *Id.* at 657–58. So the court will consider this objection in the context of considering those other requirements.

Defendants also raise an overbreadth objection, though they don't phrase it that way. A class definition is overbroad when it "include[s] a great number of members who . . . could not have been harmed by the defendant's allegedly unlawful conduct." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 824 (7th Cir. 2012). Defendants say that simply looking at recorded calls with attorneys is inadequate because not all of those calls were protected by the attorney-client privilege. Defendants allege that some of the calls at issue were with lawyers who did not make an appearance in court for the prisoner and other calls lasted less than a minute. But defendants haven't cited any authority to support a contention that either of these distinctions is relevant to the claims in this case. In any event, the court of appeals has rejected the view that "minor overbreadth problems" require a denial of class certification. *Id.* at 826 n.15. Rather, "the better course is . . . to amend the class definition as needed to correct for

the overbreadth." *Id.* If defendants show later that some members of the class were not harmed, defendants may move at that time to narrow the scope of the class.

## B. Rule 23(a) factors

### 1. Numerosity

Defendants say that Lieberman can't satisfy this requirement because he hasn't adduced evidence regarding the specific number of calls that were recorded during the class period. But "a class can be certified without determination of its size, so long as it's reasonable to believe it large enough to make joinder impracticable and thus justify a class action suit." *Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*, 747 F.3d 489, 492 (7th Cir. 2014). That standard is met in this case.

Again, it is undisputed that defendants had a policy of recording all telephone calls during the class period (as narrowed by the court). Lieberman has cited telephone records showing that there were approximately 90 different inmates who made attorney phone calls during that time. *See* Dkt. 61. As defendants acknowledge, "a forty–member class is often regarded as sufficient to meet the numerosity requirement," *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 859 (7th Cir. 2017), so 90 class members is more than enough.

Defendants say that there may be fewer than 90 class members because some of the calls at issue were with lawyers who did not make an appearance in court for the prisoner and other calls lasted less than a minute. But the court already addressed this issue in the context of discussing the class definition. At this point, defendants haven't shown that those inmates should be excluded from the class. And even if the court were to exclude inmates that defendants say aren't protected by the attorney-client privilege, it would still leave more than 60 inmates, which is sufficiently numerous to make joinder impractical.

### 2.  Commonality

An issue of fact or law is common under Rule 23 if it is capable of class-wide resolution. *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015). In this case, the key common question is whether the defendants had a policy of recording inmate phone calls with attorneys that violated the inmates' rights. *See Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) ("Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question."). Because defendants do not deny that there are common questions, the court need not discuss this factor further.

### 3.  Typicality

The named plaintiff's claims are typical of the class if they have "the same essential characteristics as the claims of the class at large." *De La Fuente v. Stokely Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). Defendants raise multiple objections to class certification on this ground.

First, defendants say that Lieberman's claims are not typical of the class because Lieberman alleges that he filed an administrative grievance and a notice of claim, but he doesn't identify any other class member who did. "A representative might be inadequate if he is subject to a substantial defense unique to him." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1027–28 (7th Cir. 2018).

Defendants' argument isn't persuasive. As for the issue of exhaustion, the court has already held in the context of defendants' motion for summary judgment that inmates didn't need to file a grievance to challenge the recording policy, so it makes no difference whether other class members filed grievances. As for the notice of claim requirement, defendants have already stated that they plan on seeking dismissal of *all* the class members' claims on the ground

that they didn't comply with the notice of claim requirement, Dkt. 70, at 2 n.2, so this is not a unique defense. The common question will be whether the notice that Lieberman filed is adequate for all class members.

Defendants' second argument is more convoluted. It goes something like this: (1) Lieberman testified during his deposition that he didn't believe that jail officials were recording his attorney phone calls, despite warnings in the inmate handbook that all calls were recorded; (2) this testimony suggests that Lieberman intends to argue that his belief means that he didn't consent to his attorney calls being recorded; (3) Lieberman hasn't cited testimony from any other proposed class members that they had a similar belief; (4) Lieberman's claims aren't typical of the class because he is the only one relying on a subjective belief to support his claim.

This argument fails. Lieberman hasn't contended that he plans to make his personal beliefs part of the basis for his claims. More important, neither side cites any authority for the view that an inmate's personal belief is an element of any of those claims. Although the parties agree that the issue of inmate consent is important to Lieberman's Fourth Amendment claim, consent under the Fourth Amendment is determined through a review of objective facts. *See Florida. v. Jimeno,* 500 U.S. 248, 251 (1991) ("The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness."). In this case, it appears that a key question will be whether the inmates consented to the recording when they decided to continue with attorney phone calls despite warnings from the jail that all calls were recorded. Because defendants allege that they gave the same warning to all inmates, the court should be able to resolve that issue on a class-wide basis. *See Johnson v. CoreCivic,* No. 16-cv-947-srb, 2018 WL 7918162, at *10 (W.D. Mo. Sept. 18, 2018) (in class

action about recording inmates' phone calls with attorneys, rejecting contention that consent was an individual issue; "the prevailing common legal question [is] whether [the defendants'] warnings of potential recording and monitoring of communications between attorneys and their detainee-clients rise to the level of consent, which applies to the class as a whole").

The court concludes that Lieberman's recording claim is typical of the class's claims.

### 4. Adequacy

Adequacy has two components, one that relates to the named plaintiffs and one that relates to class counsel. The named plaintiff must show that his claims are not in conflict with the claims of the proposed class and that he has a sufficient interest in the outcome of the case. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). *See also Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997) ("The adequacy inquiry . . . serves to uncover conflicts of interest between named parties and the class they seek to represent."). Rule 23(g)(1) sets forth four factors that a court must consider before appointing class counsel: the quality of counsel's work in the case; counsel's experience in handling similar cases; counsel's knowledge of the law; and the resources that counsel can devote to the case.

As for Lieberman's adequacy, defendants raise one issue that relates to Lieberman's request to serve as the representative for a class under Rule 23(b)(2) for declaratory or injunctive relief. The court will discuss that issue in the next section. Defendants raise no objections to Lieberman's adequacy to serve as a representative under Rule 23(b)(3) for a class of inmates whose attorney phone calls were recorded between June 12, 2012, and November 24, 2015. Because Lieberman alleges that defendants repeatedly recorded his attorney phone calls during that period, he has a sufficient interest in the outcome of that claim to serve as a

representative for that claim. Defendants have identified no conflicts of interest and the court isn't aware of any.

But the court cannot approve counsel's request to represent the class because they haven't supported the request. They say in their brief that they meet all of the requirements under Rule 23(g)(1), but they didn't submit any evidence to support those conclusions. Although the court can determine from the record in this case whether counsel are competent and knowledgeable of the law, counsel must also show that they have the experience and resources necessary to litigate a class action. So the court will defer a decision on whether to appoint class counsel to give counsel an opportunity to make that showing.

## C. Rule 23(b)

### 1. Rule 23(b)(2): injunctive class

Rule 23(b)(2) applies when the plaintiffs are seeking injunctive or declaratory relief and "the party opposing the class has acted or refused to act on grounds that apply generally to the class." Defendants object to certifying a class under Rule 23(b)(2) on the ground that Lieberman was released from the jail before he filed this lawsuit, so he doesn't have standing to seek an injunction to change jail policies and practices.

The court already raised this issue in the order screening Lieberman's complaint. *See.* Dkt. 7, at 4 ("Lieberman says that he has not been housed at the Portage County jail since January 2016 and he does not allege that there is any likelihood that he will return in the foreseeable future. Under these circumstances, Lieberman does not have standing to seek declaratory or injunctive relief."). In response to the court's order to show cause, Lieberman said that he "does not challenge the Court's ruling that Plaintiff does not have standing to enjoin the continued unlawful recording of attorney-client privileged calls." Dkt. 14, at 4 n.2,

but he said that he had standing to seek injunctive relief in the form of destruction of the recordings. Dkt. 14, at 4–5. The court allowed Lieberman to proceed on that more limited claim for injunctive relief. Dkt. 18, at 3.

In his motion for class certification, Lieberman doesn't seek to certify a class under Rule 23(b)(2) for the limited purpose of destroying any recordings that defendants have retained, so the court will not consider that issue. Instead, he asks the court to reconsider the conclusion that he can't get an injunction to challenge the jail's current policy, arguing that his claim is "inherently transitory," so it qualifies for an exception to the mootness doctrine. Dkt. 60, at 34. Lieberman doesn't explain why he waited until now to seek reconsideration of an order issued in July 2018. Regardless, the doctrine he cites applies only when a claim is mooted *after* the plaintiff files the lawsuit, not when the plaintiff lacks standing at the time the complaint is filed. *See Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 51 (1991). The court of appeals made the same point in *Holmes v. Fisher*, 854 F.2d 229, 232 (7th Cir. 1988), a case this court cited in the screening order, Dkt. 7, at 4, but Lieberman ignores. Adding to the problem is that it is undisputed that that defendants changed the recording policy in November 2015. Because Lieberman doesn't allege that defendants ever recorded his attorney phone calls under the new policy, he cannot represent a subclass challenging the new policy. And any request to change the old policy is moot as to both Lieberman and all the proposed class members.

In any event, Lieberman hasn't shown that this case is a good fit for the "inherently transitory" exception, which doesn't apply unless "it is uncertain that a claim will remain live for any individual who could be named as a plaintiff long enough for a court to certify the class." *Olson v. Brown*, 594 F.3d 577, 582 (7th Cir. 2010). In *Arreola*, the court of appeals rejected a similar argument to the one Lieberman is making, which is that a jail "typically serves

only as a temporary housing facility for inmates," so the court should allow the named plaintiff to serve as a representative of an injunctive class despite the fact that the plaintiff had been released from the jail before he filed the lawsuit. 546 F.3d at 799 ("[W]e cannot conclude that it would be impossible for a more suitable representative of a Rule 23(b)(2) class to emerge."). In this case, Lieberman has cited no evidence that all members of the proposed class would be unlikely to be housed in the Portage County jail long enough to obtain a class certification decision. Lieberman himself alleges that he was housed in the jail for 17 months.

Lieberman seems to realize that the law is against him, so he asks the court to "exten[d] . . . current law" to allow him to serve as a representative for an injunctive class. Dkt. 76, at 21–22. But that is an argument that Lieberman will have to make to the court of appeals or the Supreme Court. This court has no authority to disregard binding precedent such as *McLaughlin*, *Holmes*, and *Arreola*.

Alternatively, Lieberman asks the court to certify a class for declaratory relief. But the court addressed this issue in the screening order as well, citing *Stewart v. McGinnis*, 5 F.3d 1031, 1037–39 (7th Cir. 1993), in which the court of appeals held that the same limitations on obtaining injunctive relief apply to declaratory relief as well. Lieberman doesn't identify any legal interest he has in a declaration on the validity of a policy that hasn't been in effect for four years. *Tobin for Governor v. Ill. State Bd. of Elections*, 268 F.3d 517, 528 (7th Cir. 2001) (claim for declaratory judgment is moot when "relief . . . would have no impact on the parties to th[e] suit").

Because Lieberman hasn't shown that he would be an adequate class representative on a claim for declaratory or injunctive relief, the court will deny Lieberman's motion to certify a class under Rule 23(b)(2).

## 2.  Rule 23(b)(3): damages class

Rule 23(b)(3) applies when "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Among the factors that the court may consider are:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Defendants contend that certification is improper under Rule 23(b)(3) for the following reasons: (1) neither Lieberman nor any class member is entitled to damages for "mental or emotional injury" under 42 U.S.C. § 1997e(e) because none of them suffered a physical injury; (2) the issue of consent requires an individualized inquiry into each class member's state of mind; and (3) it is too difficult to identify the members of the class.

Defendants' first two objections don't require extended discussion. As for the objection under § 1997e(e), Lieberman isn't seeking damages for mental or emotional injury, so the objection is simply irrelevant. And even if Lieberman were seeking such damages, defendants do not identify any reason why § 1997e(e) would apply differently to different class members. As for the objection about consent, the court has already rejected defendants' argument in the context of the discussion about typicality. Again, the court is not persuaded that determining the issue of consent will require an inquiry into each class member's mental state.

Defendants' third objection is a challenge to Lieberman's proposed method of identifying class members, which relates to the question of "the likely difficulties in managing a class action." *See Mullins*, 795 F.3d at 658. Lieberman says that he has generated a list of possible class members by using the jail's "call detail records," which identify inmates calls by inmate name, the number called, the date and time of the call, the length of the call, and whether the call was recorded. *See* Dkt. 61. Lieberman has matched phone numbers with lawyers using Google searches to generate a list of inmates during the class period whose calls with attorneys were recorded. *Id.*

Defendants say that Lieberman's method is inadequate because it is "common" for inmates to use each other's "PIN" numbers to make calls, which renders the call logs unreliable. Defendants cite testimony from both Lieberman and defendant Cory Nelson, but neither party's testimony supports defendants' contention. Nelson answered "correct" when he was asked whether there are "some occasions where an inmate may use someone else's PIN number, right?" Dkt. 63 (Dep. 101:4–6). Lieberman answered, "I think that did happen. Yes," in response to a question whether inmates used another inmate's PIN to make phone calls. Dkt. 65 (Dep. 53:14–17). Lieberman later said it was "probably" a "fairly common" practice, but he immediately qualified that statement by saying, "that's speculation." *Id.* at 53:20–23. Neither witness provided any foundation for his opinion. And defendants have not cited evidence that a single inmate during the class period or otherwise used another inmate's PIN to call an attorney. *See Messner*, 669 F.3d at 825–26 (declining to reverse class certification because of class members who may be subject to an individualized defense when the defendant "has given us no indication how many such individuals actually exist").

If later acquired evidence shows that jail officials did not record attorney phone calls of some of the individuals who receive class notice, defendants may move to exclude those individuals from the class at that time. But at this point, the court declines to deny class certification on the basis of "speculation." *Cf. CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 728 (7th Cir. 2011) ("Serious challenges to typicality and adequacy must be distinguished from petty issues manufactured by defendants to distract the judge from his or her proper focus under Rule 23(a)(3) and (4) on the interests of the class.").

The ultimate question in a Rule 23(b)(3) class is whether "judicial economy from consolidation of separate claims outweighs any concern with possible inaccuracies from their being lumped together in a single proceeding for decision by a single judge or jury." *Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003). Lieberman has met that standard. He has identified a jail policy that was applied the same way to inmates at the prison over the course of multiple years. Under these circumstances, it makes sense to allow the claims of the proposed class to be resolved in "one fell swoop" rather than in piecemeal fashion. *See Jones v. Cruisin' Chubbys Gentlemen's Club*, No. 17-cv-125-jdp, 2018 WL 1175412, at *3 (W.D. Wis. Mar. 6, 2018) ("A classwide policy or practice related to a key issue of liability is one of the most common ways for plaintiffs to show that class certification is appropriate, even when there are some differences among the potential claims.").

In sum, the court concludes that Lieberman has satisfied the requirements for a Rule 23(b)(3) class, with one exception, which is the adequacy of the proposed class counsel. The court will give Lieberman an opportunity to submit supplemental materials showing that his counsel satisfy the requirements under Rule 23(g)(1).

## D. Notice

Under Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Generally, the plaintiff includes a proposed class notice with his motion for certification, but Lieberman failed to do that in this case. I will give Lieberman the opportunity to do that now. He should take care to include all the information required under Rule 23.

Notice must clearly, concisely, and comprehensibly state: (1) the nature of the action; (2) the class definition; (3) the class claims, issues or defenses; (4) that a class member may enter an appearance through an attorney should he or she desire; (5) that the court will exclude any class member requesting exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on class members. Fed. R. Civ. P. 23(c)(2)(B).[6]

## E. John Doe defendants

One last point. Lieberman included in his complaint unnamed officials at the Portage County jail and the Portage County District Attorney's Office. The presumptive deadline for amending the complaint was November 26, 2018, but Lieberman has not moved to amend the complaint to identify any additional defendants. Because Lieberman has removed the John Doe parties from the captions of his briefs and he doesn't mention them in any of his new filings, the court will assume that Lieberman has abandoned his claims against the unnamed defendants and dismiss them from the case.

---

[6] Lieberman may wish to review the illustrative class action forms prepared by the Federal Judicial Center for guidance, available at https://www.fjc.gov/content/301253/illustrative-forms-class-action-notices-introduction.

ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment, Dkt. 54, is DENIED as to plaintiff's claim that defendants recorded his attorney phone calls. The motion for summary judgment is GRANTED as to plaintiff's claims that defendants transmitted and used the recordings and that claim is DISMISSED without prejudice for plaintiff's failure to exhaust his administrative remedies.

2. Plaintiff's motion for class certification, Dkt. 59, is DENIED as to a class under Rule 23(b)(2). A decision on the motion is STAYED as to a class under Rule 23(b)(3). Plaintiff may have until July 11, 2019, to submit supplemental materials showing that his counsel meets the requirements of Rule 23(g)(1). If plaintiff doesn't respond by July 11, the court will deny plaintiff's motion for class certification in full.

3. Plaintiff may have until July 11, 2019, to file a proposed class notice. Defendants may have until July 18, 2019, to file any objections to the notice.

4. The John Doe defendants are DISMISSED.

Entered June 27, 2019.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge