IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BRETT LIEBERMAN, individually and
on behalf of all others similarly situated,

                Plaintiff,

  v.

PORTAGE COUNTY, MIKE LUKAS,
CORY NELSON, and DALE BOETTCHER,

                Defendants,

    and

WISCONSIN COUNTY MUTUAL INSURANCE
CORPORATION,

                Intervenor-Defendant.

OPINION and ORDER

18-cv-450-jdp

---

Plaintiff Brett Lieberman represents a class of individuals detained at the Portage County jail between June 2012 and November 2015. Lieberman contends that Portage County and three jail officials violated the inmates' rights under state and federal law by recording their telephone conversations with their lawyers. Defendants move for summary judgment on all claims. Dkt. 91. Intervenor Wisconsin County Mutual Insurance Corporation also moves for partial summary judgment, seeking a declaration that it does not have a duty to indemnify defendants for any damages awarded on Lieberman's claim under the Wisconsin Electronic Surveillance Control Law. Dkt. 86.

Lieberman's only remaining federal claim arises under the Fourth Amendment. That claim fails because the undisputed facts show that: inmates had notice that their calls were being recorded; when an attorney asked for more privacy, defendants accommodated that

request; inmates had other options for engaging in confidential communication with their lawyers; and none of the defendants listened to any attorney calls or otherwise used the recordings to harm the inmates. Under these facts, no reasonable jury could find that defendants intruded on the class members' reasonable expectation of privacy, which is the relevant Fourth Amendment standard. Because there are no genuine issues of material fact and defendants are entitled to judgment as a matter of law, the court will grant defendants' motion for summary judgment on Lieberman's federal claim. *See* Fed. R. Civ. P. 56(a).

The court will dismiss Lieberman's state-law claim under 28 U.S.C. § 1367(c)(3) because the court has dismissed all the federal claims and neither side has identified a reason for retaining jurisdiction over the state-law claim. The court will deny the insurance company's motion for partial summary judgment as moot.

UNDISPUTED FACTS

Plaintiff Brett Lieberman was incarcerated at the Portage County jail from August 2014 through January 2016. Defendant Mike Lukas has been the Portage County sheriff since January 2015. Defendant Cory Nelson has been the captain of corrections at the jail since 2011. Defendant Dale Boettcher was the jail sergeant from 2011 to 2019.

**A. Portage County jail's telephone policies and practices**

In 2007, the jail began contracting with a company called Securus for call recording services. Under the system installed by Securus, all phone calls from the cell blocks would be recorded "unless the phone number being dialed ha[d] been designated as private."

Dkt. 108, ¶ 47. Telephone numbers associated with the Portage County Public Defender's office were designated as private.[1] The phone system retains calls for 120 days.

During the time relevant to this case, the jail's "Inmate Orientation Handbook" included a section called "Telephones." Dkt. 60-11, at 16. That section included the following language:

**<u>All telephone calls are monitored and recorded.</u>**

> While an Inmate at the Portage County Jail, you will have access to a phone. The phones are located in the dayroom areas of the housing areas as well as a phone cart in the receiving area. All calls are collect and may be monitored. Provided that your cell and dayroom area are clean, the phone will be on from opening in the morning to lockdown in the evening.
>
> The phones at this jail are equipped to provide details regarding your calls. These details include the number you called, the time you made the call, the number of times you called a number, and how long the call lasted.

*Id.* (emphasis in original). The handbook also had a section for "Mail," which identified correspondence with an attorney as "privileged." *Id.* at 14. Privileged mail was delivered to inmates without being opened. *Id.*

The handbook was provided to all incoming inmates, including Lieberman. Each inmate was required to sign a written acknowledgement that he had received the handbook. The handbook was also available on the jail's website.

---

[1] Lieberman purports to dispute this fact, Dkt. 105, ¶ 54, but he does not raise a genuine issue of fact. He doesn't object to the admissibility of defendants' cited evidence, and he doesn't include a citation to the record to support the dispute, so the court has treated the fact as undisputed. *See* Dkt. 23, "Motions for Summary Judgment," II.C. ("The court will conclude that a proposed fact is undisputed unless the responding party explicitly disputes it and either identifies contradictory evidence in the record, or demonstrates that the proponent of the fact does not have admissible evidence to support it.").

Until September 2014, the jail's internal procedures manual stated, "Incoming or outgoing telephone calls can be monitored." The manual did not include an exception for attorney calls. After September 2014, the manual stated, "All calls are recorded and most can be monitored (attorneys and clergy are not to be monitored)." The manual recognized that "[a]ll communication between inmates and their attorneys is confidential, including telephone [c]onversations."

Before November 2015, telephone calls made from a jail cell block by an inmate began with an automated message that included the statement, "this call is subject to recording and monitoring." The message also stated that the call was coming from an inmate. Both the inmate and the recipient of the call could hear the message.[2] Before being connected to the inmate, the recipient had to accept the call by pressing the number "1" on his or her telephone. The jail did not post signs in the jail warning inmates that calls with attorneys were recorded.

Attorneys who wanted to speak confidentially with their clients could schedule phone calls with inmates on a non-recorded, non-monitored phone line, but that option was not communicated to inmates. Attorneys could also communicate with inmates confidentially through the mail, through a "video visit," or in person.

In November 2015, the inmate handbook was amended to explain the procedure for designating an attorney's number as private so that calls to the attorney would not be recorded.

---

[2] The parties don't say whether inmates could receive incoming calls, or, if they could, whether the same message was played for both participants for incoming calls. Because Lieberman has the burden of proof, the parties' silence on this issue means that the court cannot speculate. *See Harney v. City of Chicago,* 702 F.3d 916, 924–25 (7th Cir. 2012) ("A plaintiff must begin to meet [its] burden [of proof] by submitting admissible, supporting evidence in response to a proper motion for summary judgment."); *NLRB v. Louis A. Weiss Mem'l Hosp.,* 172 F.3d 432, 446 (7th Cir. 1999) ("An absence of evidence does not cut in favor of the one who bears the burden of proof on an issue.").

**B. Recording Lieberman's telephone calls with his attorney**

In September 2014, the district attorney asked Boettcher (the jail sergeant) to preserve Lieberman's mail and phone calls "that [were] not to or from his attorneys." Boettcher directed jail staff to "download the calls and photocopy the mail logs." Dkt. 95-5. Jail staff sent a compact disc of recorded calls to the district attorney, who then forwarded a copy of the disc to Lieberman's criminal defense counsel. In October 2014, defense counsel informed the district attorney that the disc contained a recording of Lieberman speaking to his lawyer. The district attorney then informed Nelson (the captain of corrections) about the recording.[3]

In September 2015, Lieberman's defense counsel provided the district attorney with their phone numbers so they could be designated as private and would not be recorded. The same day, the district attorney forwarded those numbers to Nelson, who then asked Securus to designate the numbers as private. In an October 2015 letter, Nelson informed the Portage County Bar Association that lawyers could designate their calls as private by contacting the jail administrator.

In November 2015, jail staff sent the district attorney another compact disc that included a recording of a call between Lieberman and his lawyer. After the district attorney notified Nelson, Boettcher, and Lukas about the recording, Nelson contacted Securus to find out why the number of Lieberman's defense counsel still wasn't designated as private. According to Securus, its employees "did not complete all of the required steps to successfully

---

[3] Neither side proposes facts about what Nelson did in response to the information that Lieberman's attorney phone call had been recorded in 2014. In his deposition, Nelson testifies that Boettcher sent the district attorney an email stating that lawyers could provide their numbers to the jail so that their calls "could [be] exclude[d] . . . from the download as we record the calls onto a disc." Dkt. 63 (Nelso Dep. 189:4–192:10). Lieberman doesn't allege that he or his lawyers contacted any of the defendants about keeping his lawyers' phone numbers private.

5

resolve the issue," but Securus confirmed that the number was now designated as private Dkt. 73-3. Other than Lieberman's, no inmate's legal calls were sent to the district attorney.

The individual defendants never listened to any recordings of conversations between Lieberman and his lawyer.

ANALYSIS

Lieberman originally asserted claims under the Fourth Amendment, the Sixth Amendment, the Fourteenth Amendment, the Wisconsin Constitution, and the Wisconsin Electronic Surveillance Control Law (WESCL). Lieberman does not oppose defendants' motion for summary judgment on his claims under the Sixth Amendment, the Fourteenth Amendment, or the Wisconsin Constitution, *see* Dkt. 104, at 40, so the court will dismiss those claims. Lieberman has also abandoned his request for injunctive relief. This leaves Lieberman's claims for money damages under the Fourth Amendment and the WESCL.

**A. Fourth Amendment**

There is no dispute that the Portage County jail's telephone system was recording conversations between inmates and their lawyers during the class period. The question is whether defendants' conduct violated the Fourth Amendment under the circumstances of this case.

   **1. Application of the Fourth Amendment to inmate-attorney telephone conversations**

The Fourth Amendment prohibits the government from performing "unreasonable searches," among other things. U.S. Const. amend. IV. Lieberman's theory is that he had a reasonable expectation of privacy when speaking to his lawyer on the telephone at the jail, so recording calls with his lawyer qualifies as an unreasonable search within the meaning of the

Fourth Amendment. *See Oliver v. United States,* 466 U.S. 170, 177 (1984) ("Since *Katz v. United States,* 389 U.S. 347 (1967), the touchstone of [Fourth] Amendment analysis has been the question whether a person has a constitutionally protected reasonable expectation of privacy." (internal quotations omitted)). Defendants contend that Lieberman did not have a reasonable expectation of privacy because he was informed both in the inmate handbook and when placing calls that his calls would be monitored and recorded. For the same reason, defendants say that there is no Fourth Amendment violation because Lieberman consented to the recording by choosing to continue with calls despite receiving notice of the recording. *See United States v. White,* 781 F.3d 858, 860–61 (7th Cir. 2015) (Fourth Amendment protections do not apply when person consents to the search).

Neither the Supreme Court nor the Court of Appeals for the Seventh Circuit have directly answered the question whether the Fourth Amendment protects attorney-client conversations in the jail or prison setting. On one hand, it is well established that both pretrial detainees and convicted prisoners have diminished privacy interests under the Fourth Amendment.[4] *See Maryland v. King,* 569 U.S. 435, 463 (2013). The Supreme Court has reasoned that a "right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Hudson v. Palmer,* 468 U.S. 517, 527–28

---

[4] The parties don't say whether all of the class members were pretrial detainees or whether some were already convicted. In some contexts, courts have held that detainees are entitled to greater constitutional protections than prisoners. *See Hardeman v. Curran,* 933 F.3d 816, 823 (7th Cir. 2019) (applying different standards for conditions-of-confinement claims brought by detainees and prisoners). Although case law doesn't clearly distinguish between detainees and convicted prisoners for the purpose of determining a reasonable expectation of privacy under the Fourth Amendment, the court will assume that everyone in the class was a pretrial detainee.

7

(1984). As a result, the Court has rejected Fourth Amendment challenges to a jail policy that required "every detainee who will be admitted to the general population . . . to undergo a close visual inspection while undressed," *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 322 (2012), and to a prison policy allowing random searches of inmate lockers and cells without suspicion of wrongdoing. *Hudson*, 468 U.S. at 529.

For its part, the Court of Appeals for the Seventh Circuit has held that the Fourth Amendment didn't give a federal prisoner's sister-in-law a reasonable expectation of privacy in telephone conversations she had with the prisoner. *United States v. Sababu*, 891 F.2d 1308, 1329–30 (7th Cir. 1989). In other cases, the court has questioned whether the Fourth Amendment applies to prisoners in any circumstances other than an intrusion of the prisoner's bodily integrity. *See U.S. v. Shaw*, 824 F.3d 624, 629 (7th Cir. 2016); *King v. McCarty*, 781 F.3d 889, 900 (7th Cir. 2015).

On the other hand, the court of appeals has recognized the importance of confidential communication between clients and their counsel. For example, in *Denius v. Dunlap*, 209 F.3d 944, 954 (7th Cir. 2000), the court observed that "the right to confer with counsel would be hollow if those consulting counsel could not speak freely about their legal problems." As a result, the court held that "absent appropriate justification the state cannot compel the revelation of privileged attorney-client communications." *Id.* at 955. But *Denius* was grounded in the First Amendment, not the Fourth, and the plaintiff was a teacher, not a detainee. *See also Gennusa v. Canova,* 748 F.3d 1103, 1112 (11th Cir. 2014) ("The status of the persons being recorded matters because, as the Supreme Court has said on various occasions, the expectations of privacy of an individual taken into police custody necessarily are of a diminished scope." (internal quotations and alterations omitted)).

In *Guajardo-Palma v. Martinson*, the court considered lawyer-client confidentiality in the prison context. 622 F.3d 801 (7th Cir. 2010). Although the court rejected the view that "the lawyer-client privilege is constitutional," the court stated that "the opportunity to communicate privately with an attorney is an important part of" a prisoner's constitutional right to have access to the courts. *Id.* at 802. However, even in that case, the court held that reading correspondence between a prisoner and his counsel doesn't violate the right to access the courts unless doing so interferes with litigation. *Id.* at 806. The court articulated a similar rule under the Sixth Amendment right to counsel when the court stated, "[p]rison officials may tape a prisoner's telephone conversations with an attorney only if such taping does not substantially affect the prisoner's right to confer with counsel." *Tucker v. Randall*, 948 F.2d 388, 391 (7th Cir. 1991). Neither *Tucker* nor *Guajardo-Palma* considered a claim under the Fourth Amendment.

The above case law suggests that the Fourth Amendment has very limited scope in jails and that constitutional protection for lawyer-detainee communications may be governed by other amendments. But, for the purpose of this opinion, the court will assume that the Fourth Amendment protects conversations between detainees and their lawyers. In *Florence*, the Court decided a detainee's Fourth Amendment claim by asking whether the policy at issue was "reasonably related to legitimate penological interests." 566 U.S. at 326. In this case, defendants do not contend that they have any legitimate interests in eavesdropping on detainee-attorney telephone calls. And other courts considering the question have held that detainees and prisoners retain Fourth Amendment rights in keeping conversations with their attorney confidential. *See, e.g., Jayne v. Bosenko*, No. 08-CV-02767-MSB, 2014 WL 2801198, at \*13 (E.D. Cal. June 19, 2014); *Brown v. Gulash*, No. CIV. 07-CV-370-JPG, 2009 WL

2144592, at *7 (S.D. Ill. July 16, 2009); *Lonegan v. Hasty*, 436 F. Supp. 2d 419, 434 (E.D.N.Y. 2006). *See also Lanza v. State of N.Y.*, 370 U.S. 139, 143–44 (1962) ("It may be assumed that even in a jail, or perhaps especially there, the relationships which the law has endowed with particularized confidentiality must continue to receive unceasing protection.").

### 2. Application of the Fourth Amendment to the facts of this case

The question in this case isn't simply whether detainees have Fourth Amendment rights. Rather, the question is whether defendants violated the Fourth Amendment under the circumstances of this case. There is no genuine dispute as to the following facts: (1) the inmate handbook stated that "all" telephone calls are monitored and recorded; (2) a recorded message at the beginning of calls announced that the "call is subject to recording and monitoring"; (3) defendants attempted to accommodate requests for designating attorney numbers as private; and (4) no defendant ever listened to recorded conversations between detainees and lawyers or otherwise used a recorded call against a class member. Do those facts support a Fourth Amendment claim?

#### a. What qualifies as a "search?"

A threshold question is whether any of the defendants were personally involved in a "search" within the meaning of the Fourth Amendment. Although defendants do not deny that they were aware that phone calls from the cell blocks were recorded, they do deny knowledge of attorney calls being recorded, saying that they "reasonably assumed that inmates were not calling their attorneys from the phones located in the cell blocks." Dkt. 108, at 18, ¶ 77. Arguably, a reasonable jury could reject that testimony. Before November 2015, there was no established procedure for designating attorney calls as private (except for calls from the public defender), and defendants do not explain why they "assumed" that significant numbers of

detainees were invoking a procedure they hadn't been told about. *See McCottrell v. White,* 933 F.3d 651, 657–58 (7th Cir. 2019) (on a motion for summary judgment, court must draw all reasonable inferences in favor of nonmoving party, and circumstantial evidence can be sufficient to support a reasonable inference).

But even if defendants were aware in a general sense that some attorney calls were being recorded, it isn't clear whether that would be enough to prove a Fourth Amendment violation. Lieberman hasn't adduced any evidence that any of the defendants were trying to intercept attorney calls or that any of the defendants ever listened to a detainee's attorney call. Rather, attorney phone calls were simply swept up with all the other calls. After Lieberman complained about the problem and provided the jail with his lawyers' telephone numbers in September 2015, defendants directed the company providing telephone services to designate those numbers as private.[5]

Neither side directly addresses the question whether the defendant is personally involved in a "search" under the Fourth Amendment if a recording is made through an automated system but the defendant wasn't aware of the particular call, had no intent to listen to it, and never did listen to it. This is the Fourth Amendment version of George Berkeley's famous question: if a tree falls in the forest and no one is there to hear it, does it still make a sound? Even if a recording without a listener could qualify as a search, the Fourth Amendment applies only when there is an *intent* to search or seize. *See Brower v. County of Inyo,* 489 U.S.

---

[5] Although Lieberman complains that defendants continued recording his attorney calls after September 2015, it is undisputed that defendant Nelson directed the recording services provider to designate those calls as private and that more calls were recorded because the provider failed to implement Nelson's request. Dkt. 108, ¶¶ 74, 80. Lieberman does not contend that defendants can be held liable for the provider's mistake.

593, 596–97 (1989) ("Violation of the Fourth Amendment requires an intentional acquisition of physical control. . . . [T]he Fourth Amendment addresses misuse of power, not the accidental effects of otherwise lawful government conduct."). *See also U.S. v. Norwood*, 602 F.3d 830, 835 (7th Cir. 2010) ("[O]nly intentional conduct violates the Constitution."). Is general knowledge that calls are being recorded enough to show that defendants intended to conduct a search of class members' confidential attorney communications?

These are important questions for this case, but they do not have obvious answers. And neither side cites authority addressing whether the Fourth Amendment applies when the defendant neither uncovers nor intends to uncover any private information. Because the parties haven't fully engaged the issue, and the court can decide the case on other grounds, the court need not decide whether defendants were personally involved in conducting a search.

    b. **Notice of recording**

The parties cite only a few cases in which courts have considered a Fourth Amendment claim for monitoring or recording detainees' telephone calls with their lawyers. *See United States v. Novak,* 531 F.3d 99, 101–02 (1st Cir. 2008) (O'Connor, J., sitting by designation); *Guild v. Securus Techs., Inc.*, No. 14-CV-366-LY, 2015 WL 10818584, at *12 (W.D. Tex. Feb. 4, 2015); *Andersen v. Cty. of Becker*, No. CIV 08-5687 ADM RLE, 2009 WL 3164769, at *11 (D. Minn. Sept. 28, 2009); *Lonegan*, 436 F. Supp. 2d at 434–36; *In re State Police Litig.*, 888 F. Supp. 1235, 1256 (D. Conn. 1995). *See also Jayne,* 2014 WL 2801198, at *13–19*; Jones v. Buchanan,* No. 08-CV-3199, 2012 WL 1378327, at *9 (C.D. Ill. Apr. 19, 2012); *Bansal v. Pavlock*, No. CV 07-703, 2008 WL 11450436, at *3 (E.D. Pa. Feb. 13, 2008).[6] In each of these cases, the deciding factor was whether the inmate had sufficient notice that the call was being recorded.

---

[6] It appears that many claims about eavesdropping on conversations between detainees and the

Some courts framed the question as whether the inmate had a reasonable expectation of privacy. *See, e.g., Jones*, 2012 WL 1378327, at *9 ("Plaintiff and his attorney knew that their conversation was not confidential because they knew that Defendants refused to leave the room. They thus had no reasonable expectation of privacy."). Other courts said that the question was one of consent. *See, e.g., Novak*, 531 F.3d at 103 (detainee "consented to monitoring of his calls" when he "was made aware, both through posted signs and recorded messages, that his calls would be monitored and recorded"). But all the courts have agreed on one point: if the inmates were put on notice that their calls were being recorded, the Fourth Amendment claim failed. *See, e.g., In re State Police Litig.,* 888 F. Supp. at 1256 ("[T]he determination of whether the plaintiffs' expectations of privacy were reasonable depends on proof of the absence of notice.").

That conclusion is consistent with a more general principle that is well established in the case law: "What a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection." *Katz*, 389 U.S. at 351. That principle is often applied in determining whether someone has a reasonable expectation of privacy. As relevant to this case, the reasonableness of any expectation of privacy is significantly diminished if a person is outside

---

lawyers arise in criminal cases in which the defendant contends that the government violated his Sixth Amendment right to counsel. *See, e.g., United States v. Hatcher*, 323 F.3d 666 (8th Cir. 2003); *United States v. Carter*, No. 16-20032-02-JAR, 2019 WL 3798142, at *77–82 (D. Kan. Aug. 13, 2019); *United States v. Chaiban*, No. 206CR-00091-RLH-PAL, 2007 WL 437704, at *1 (D. Nev. Feb. 2, 2007); *United States v. Noriega*, 764 F. Supp. 1480, 1485–90 (S.D. Fla. 1991). Other cases involve alleged violations of the federal wiretapping law. *See, e.g., United States v. Workman*, 80 F.3d 688, 693 (2d Cir. 1996). Still other cases considered First Amendment claims. *See Czapiewski v. Bartow*, No. 07-CV-549-BBC, 2008 WL 5262801, at *4–5 (W.D. Wis. Dec. 16, 2008) (concluding that First Amendment protected prisoner's right to speak privately with his lawyer). Again, Lieberman's federal claim in this case rests solely on the Fourth Amendment.

the home and should know that others may be listening. *See United States v. Webster*, 775 F.3d 897, 903–04 (7th Cir. 2015) ("Given the nature of the vehicle and the visible presence of electronics capable of transmitting any internal conversations, . . . conversations in a squad car . . . are not entitled to a reasonable expectation of privacy, and therefore the recording of the conversation is not a violation of the Fourth Amendment."); *In re John Doe Trader Number One*, 894 F.2d 240, 241 (7th Cir. 1990) (no reasonable expectation of privacy in recorded "statements of traders in the crowded, boisterous pits of the Chicago Mercantile Exchange"); *United States v. McLeod,* 493 F.2d 1186, 1188 (7th Cir. 1974) ("[A]n individual who makes a phone call on a public phone not enclosed in a booth and in a voice audible to a person standing nearby knowingly exposes the conversation to the public and is not entitled to Fourth Amendment protection." (internal alterations and quotations omitted)). Closer to the facts of this case is *Sababu,* in which the court held that the relative of a prisoner did not have a reasonable expectation of privacy when speaking to the prisoner on the telephone, in part because she was on notice that telephone calls were monitored. 891 F.2d at 1329.[7]

Lieberman doesn't challenge the view that his Fourth Amendment claim fails if he had notice that his phone calls were being recorded. And he admits that both the inmate handbook and the automated message before each phone call informed him that his call would be

---

[7] Because the court concludes that the class members did not have a reasonable expectation of privacy, it is not necessary to consider defendants' alternative theory that the class members consented to being recorded. *Compare White,* 781 F.3d at 860–61 (concluding that parolee "consented" to search through his conditions of release, which allowed for searches), *with U.S. v. Daniels,* 902 F.2d 1238, 1244–45 (7th Cir. 1990) (in case under federal wiretap law, questioning but not deciding whether inmate "consented" to telephone monitoring by choosing to use the telephone despite federal regulation that allows inmate phone monitoring because "knowledge and consent are not synonyms" and "[t]aking a risk is not the same thing as consenting to the consequences if the risk materializes").

14

recorded. But he says that the notice he received wasn't adequate, citing the following facts: (1) a 2014 internal procedures manual stated that "all communication between inmates and their attorneys is confidential, including telephone conversations," Dkt. 60-7, at 12; (2) the inmate handbook included a statement that "all calls . . . may be monitored," Dkt. 60-10, at 13; (3) the inmate handbook included the statement, "You have the right to legal counsel from an attorney of your choice. You may do this by phone, mail or professional visitation," *id.* at 1; (4) the inmate handbook stated that mail to or from the inmate's attorney is "privileged," *id.* at 11; (5) the cell blocks did not include signs warning inmates that the calls with attorneys would be recorded; and (6) inmates were not informed how to make private calls to their attorneys.

None of the facts that Lieberman cites would allow a reasonable jury to find that class members didn't have notice that their attorney calls were being recorded. As for the internal procedures manual, the statement that attorney calls are "confidential" seems to support the view that jail staff did not intend to *listen* to detainee-attorney calls, even if the calls were swept up with the *recordings* of all the other calls. Regardless, it is undisputed that neither detainees nor their attorneys could view the manual, so it is irrelevant to determining Lieberman's or any other class member's reasonable expectation of privacy.

As for the statements in the inmate handbook, none of them create ambiguity as Lieberman suggests. Lieberman focuses on the word "may" in the statement, "all calls . . . may be monitored," contending that it could lead a prisoner to believe that his calls may *not* be monitored in some instances. But the use of the word "may" in this context simply makes it clear that the decision whether to monitor a call is left to the discretion of jail staff. It does not give rise to a reasonable expectation of privacy. In any event, because Lieberman has cited no

evidence that any of the defendants listened to a single call between a class member and an attorney, defendants did not "monitor" the class's attorney calls, so the statement was not misleading.

The other cited statements from the handbook have nothing to do with the privacy of telephone conversations, so they aren't helpful. Lieberman doesn't explain why it would be reasonable to construe a statement about "privileged" mail as applying to telephone calls, especially in light of the unequivocal statement in the handbook that "all" calls are recorded.

The absence of signs in the cell block is not significant. It is true that the facility discussed in *Novak* included signs warning detainees that their calls were recorded, but the court did not suggest that such warnings were constitutionally required. 531 F.3d at 103. In this case, the class members received notice in the form of an automated message before each call. Arguably, that is better notice than a sign, which could be overlooked. Lieberman doesn't explain what additional clarity signs would provide.

Finally, Lieberman doesn't clearly explain the relevance of the fact that class members were not informed how to make private calls to their attorneys. If anything, the lack of such information would suggest that private calls are unavailable, not that all calls are private.

Lieberman may mean to contend that defendants were *required* to provide a private option for detainees. But that is a separate question from whether Lieberman had a reasonable expectation of privacy. If Lieberman had an absolute right to make a private attorney call, it is not clear whether such a right would arise under the Fourth Amendment. *See Novak,* 531 F.3d at 103 (rejecting argument that detainee had a Fourth Amendment claim for the "prison's failure to tell [him] of his right to exempt calls to his attorney from monitoring," but leaving open the question under the Sixth Amendment right to counsel); *Jones,* 2012 WL 1378327, at

*9 (rejecting claim that prison staff violated the Fourth Amendment by refusing to leave the room while the plaintiff was talking to his attorney; allowing prisoner to proceed under a First Amendment theory).

In any event, it is undisputed that "attorneys could schedule phone calls with inmates on a non-recorded, non-monitored phone line." Dkt. 108, ¶ 44. Although there was no established process for making that request during the class period, Lieberman does not allege that defendants refused any requests to speak privately. It is also undisputed that detainees could communicate confidentially with their attorneys through the mail, through a "video visit," or in person. *See Novak*, 531 F.3d at 103 (rejecting Fourth Amendment claim while noting that the detainee "did not ask prison officials if there was a way to communicate with his attorney without having his calls monitored" and "[h]e did not choose alternate means to communicate with Novak, such as by letter or in person"). Lieberman identifies no basis under the Fourth Amendment for concluding that defendants were required to publicize a "private option" for attorney phone calls.

The bottom line is that the class members received unequivocal notice both in the inmate handbook and before each call that their calls were being recorded. Lieberman doesn't allege that anyone told him or any other class member that attorney calls were *not* recorded. *See Lonegan*, 436 F. Supp. 2d at 422. If the class members wanted more privacy, they could have asked for it or communicated through other means. Although Lieberman cites his own testimony that he believed his attorney calls weren't being recorded, Dkt. 108, at 25, ¶ 10, his subjective belief isn't enough. *See United States v. Pitts*, 322 F.3d 449, 456 (7th Cir. 2003). Because Lieberman doesn't identify an objective basis for his belief, no reasonable jury could find that he or the class members had a reasonable expectation of privacy or that defendants

17

violated the class members' Fourth Amendment rights. The court will grant defendants' motion for summary judgment on Lieberman's Fourth Amendment claim.

B.  **State-law claim**

Lieberman also contends that defendants violated the Wisconsin Electronic Surveillance Control Law (WESCL), Wis. Stat. §§ 968.27–968.37. WESCL prohibits a variety of conduct, but Lieberman relies solely on Wis. Stat. § 968.31(1)(a), which applies when someone "[i]ntentionally intercepts, attempts to intercept or procures any other person to intercept or attempt to intercept, any wire, electronic or oral communication."

Lieberman relies on 28 U.S.C. § 1367 as the basis for exercising jurisdiction over his state-law claim. "Absent unusual circumstances, district courts relinquish supplemental jurisdiction over pendent state law claims if all claims within the court's original jurisdiction have been resolved before trial." *Coleman v. City of Peoria, Illinois*, 925 F.3d 336, 352 (7th Cir. 2019). In this case, neither side identifies any unusual circumstances that would justify a decision to retain jurisdiction over the state-law claim.

If Lieberman's state-law claim rose and fell with his Fourth Amendment claim, the court would be inclined to resolve both claims for the sake of efficiency. *Cortezano v. Salin Bank & Trust Co.*, 680 F.3d 936, 941 (7th Cir. 2012) ("When the resolution of [the state-law] claims is clear, . . . the court may choose to decide them."). But there are significant differences between the two claims, and the parties' briefs raise multiple, unsettled questions of state law, including: (1) the scope of the "substantial compliance" exception to satisfying the notice of claim requirements in Wis. Stat. § 893.80; (2) the circumstances under which an individual notice of claim may satisfy § 893.80 on behalf of a class; (3) the scope of the "law enforcement" exception to WESCL; and (4) the scope of Wis. Stat. § 968.30(10), which states that

"[n]othing in [WESCL] shall be construed to allow the interception of any wire, electronic, or oral communication between an attorney and a client."

Under 28 U.S.C. § 1367(c)(1), the district court may decline to exercise supplemental jurisdiction when "the claim raises a novel or complex issue of State law." *See Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007). Because all the federal questions have been resolved and Lieberman's WESCL claim raises unsettled questions of state law, the court will dismiss Lieberman's state-law claims without prejudice to his refiling them in state court.

**C. Conclusion**

Lieberman alleged in his complaint that defendants had a policy of recording and listening to attorney-client telephone calls and then sharing those recordings with the district attorney's office, which would then use information from those recordings against detainees in criminal proceedings. Dkt. 1, ¶¶ 78, 102. He also alleged that defendants were continuing to engage in those practices at the time he filed the complaint, that they were still retaining Lieberman's recordings, and that detainees were being prevented from speaking to their lawyers out of fear that they would be recorded. *Id.*, ¶¶ 77, 83, 91, 96. Lieberman has failed to prove any of those allegations.

As it turns out, the problem was one of neglect, not ill intent. There is no evidence that defendants were trying to eavesdrop on any conversations between detainees and their lawyers. Rather, defendants' mistake was in failing to establish a policy and procedure for excluding attorney phone calls from the automated recording system, a mistake that defendants have now corrected. Defendants' failure to act sooner is not laudable, but Lieberman hasn't shown

that defendants' conduct violated the Fourth Amendment. Because detainees had notice that their calls were being recorded, they did not have a reasonable expectation of privacy.

ORDER

IT IS ORDERED that:

1. The motion for summary judgment filed by defendants Portage County, Mike Lucas, Cory Nelson, and Dale Boettcher, Dkt. 91, is GRANTED. Plaintiff Brett Lieberman's claims under the state and federal constitutions are DISMISSED with prejudice. Lieberman's claim under the Wisconsin Electronic Surveillance Control Law is DISMISSED without prejudice under 28 U.S.C. § 1367(c)(3).

2. The motion for summary judgment filed by intervenor-defendant Wisconsin County Mutual Insurance Company, Dkt. 86, is DENIED as moot, and its cross claim against defendants is DISMISSED without prejudice.

3. The clerk of court is directed to enter judgment and close this case.

Entered February 21, 2020.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge